# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC R. SHANTZER, DDS d/b/a RICHBORO DENTAL EXCELLENCE,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, THE TRAVELERS INDEMNITY COMPANY,<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Eric R. Shantzer, DDS, d/b/a Richboro Dental Excellence ("Plaintiff") brings this Complaint against Defendant, Travelers Casualty Insurance Company of America and/or The Travelers Indemnity Company ("Defendant" or "Travelers") and alleges as follows:

## NATURE OF THE CASE

1.      This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendant.

2.      In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down, and the suffering of physical harm and impact and damages, within Plaintiff's business premises and/or within the immediate area surrounding and outside its business premises, Plaintiff shut the doors of his business to customers on March 16, 2020. Plaintiff's normal office hours were usually Monday from 9:00 a.m. to 8:00 p.m.; Tuesday from 9:00 a.m. to 6:00 p.m.; Wednesday from 7:00 a.m. to noon; and Thursday from 7:00 a.m. to noon or 1:00 depending upon demand.

3.      Plaintiff's insurance policy provides coverage for all non-excluded business losses and thus provides coverage here.

1

4.  As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been suffered and sustained, which losses are in an amount greater than $150,000.00.

## JURISDICTION

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant. Plaintiff is a dental office in Pennsylvania and a citizen of Pennsylvania. Defendant is a New York corporation with its principal place of business in New York. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6.  The Court has personal jurisdiction over Defendant because at all relevant times they have engaged in substantial business activities in the Commonwealth of Pennsylvania. At all relevant times, Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania, and as a result is subject to personal jurisdiction in this District.

8.  The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

**PARTIES**

9. At all relevant times, Plaintiff was authorized to do business and was doing business in the Commonwealth of Pennsylvania, County of Bucks. Plaintiff operates, manages and owns a dental office at two locations. These locations include 130 Almshouse Road, Suite 406, Richboro, Pennsylvania 18954 and 804 2nd Street Pike, Unit D, Southampton, Pennsylvania 18966 ("Insured Properties"). Plaintiff is a citizen of Pennsylvania.

10. At all relevant times, Defendant Travelers Casualty Insurance Company of America/The Travelers Indemnity Company is a corporation doing business in the Commonwealth of Pennsylvania. Defendant issued an insurance policy with Policy Number 680-7263M141-19-42 to Plaintiff for the period October 7, 2019 to October 7, 2020. *See* Policy Declaration, attached hereto as Exhibit 1. Defendant transacts business of insurance in the Commonwealth of Pennsylvania and within the County of Bucks, and the basis of this suit arises out of such conduct. Defendant is headquartered in New York at 485 Lexington Avenue, New York, New York 10017.

**FACTUAL BACKGROUND**

**I.   Insurance Coverage**

11. Defendant entered into a contract of insurance with Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for Defendant's promise to indemnify Plaintiff for losses including, but not limited to, business income losses at Plaintiff's Insured Properties.

12. The Insured Properties are covered under a policy issued by Defendant. *See* Ex. 1 (hereinafter "Policy").

13. The Policy provides, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages.

14. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures for a variety of reasons, including by order of Civil Authority.

15. Under the Policy, business interruption insurance coverage is extended to apply to, *inter alia,* the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred.

16. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

17. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a virus pandemic. Plaintiff contacted its insurance agent about making a claim under the policy and was told that Defendant would reject the claim.

**II.   The Coronavirus Pandemic**

18. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the offices and retail store constituting the Insured Property.

19. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

20. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

21. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

22. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

### III.   Civil Authority

23. On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19. *See* Exhibit 2.

24. On March 19, 2020, Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *See* Exhibit 3; https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited April 7, 2019).

25. On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. *See* Exhibit 4. On that same date, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." *See* Exhibit 5.

26. On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay-at-Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit 6.

27. The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists, resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

28. Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

29. The President is articulating a few core points:

 a. Business interruption is a common type of insurance. It applies to a variety of business establishments, including dental practices as the Plaintiff's.

 b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

 c. This pandemic should be covered unless there is a specific exclusion for pandemics.

 d. If insurers deny coverage, they would be acting in bad faith.

30. Governor Wolf and Pennsylvania Secretary of Health have now extended the statewide stay-at-home orders through Friday, May 8, 2020. *See* https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-extend-statewide-stay-at-home-order-until-may-8/ (last visited April 22, 2020).

31. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**IV.   Impact to Plaintiff**

32. As a result of the Orders referenced herein, Plaintiff is no longer able to offer dental services except for emergency treatment.

33. The Insured Properties are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Properties and remain viable for far longer as compared to other facilities with open-air ventilation.

34. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the patients and the staff require them to work in close proximity to the property.

35. The virus is physically impacting the Insured Properties. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

36. A declaratory judgment determining that the coverage provided under the Policy will prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

37. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

38. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

39. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendant disputes and denies, *inter alia,* that:

      a. The Orders constitute a prohibition of access to Plaintiff's Insured Properties;

      b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

      c. The Orders trigger coverage;

      d. The Policy provides coverage to Plaintiff for any current and future closures in Bucks County due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters;

      e. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

      f. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

40. Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Properties.

41. Plaintiff further seeks a Declaratory Judgment to affirm that the Orders trigger coverage.

42. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future closures of businesses such as Plaintiff's in Bucks County due to physical loss or damage from the Coronavirus and/or the pandemic and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Properties.

43. Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Properties, amount of damages, or any other remedy other than declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Properties.

b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus.

e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Properties or the immediate area of the Plaintiff's Insured Properties.

f. For such other relief as the Court may deem proper.

## TRIAL BY JURY IS DEMANDED

Plaintiff hereby demands trial by jury.


Dated: April 30, 2020                    Respectfully submitted,

*/s/ Daniel C. Levin*
Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III, Esq.
Rachel N. Boyd, Esq.
Paul W. Evans, Esq.
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*