IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERIC R. SHANTZER, DDS d/b/a
RICHBORO DENTAL EXCELLENCE,

       *Plaintiff*,

       v.

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA, THE
TRAVELERS INDEMNITY COMPANY,

       *Defendants*.

Case No. 2:20-cv-02093

## **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Richard L. Scheff (Pa. Attorney No. 35213)
David F. Herman (Pa. Attorney No. 318518)
ARMSTRONG TEASDALE LLP
2005 Market Street, 29th floor
One Commerce Square
Philadelphia, PA 19103
(267) 780-2000
(215) 405-9070 (fax)

Stephen E. Goldman (*pro hac vice*)
Wystan M. Ackerman (*pro hac vice*)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Tel: 860-275-8200
Fax: 860-275-8299
E-mail: sgoldman@rc.com
E-mail: wackerman@rc.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ i

I.    INTRODUCTION ............................................................................................ 1

II.   PROCEDURAL HISTORY AND ALLEGED FACTS ................................... 5

    A.    This Lawsuit ......................................................................................... 5

    B.    Contract Language At Issue ................................................................. 7

        1.    The Relevant Coverage Provisions ........................................... 7

        2.    The Virus Exclusion ................................................................. 8

III.  LEGAL STANDARDS ................................................................................... 9

IV.   ARGUMENT ................................................................................................. 10

    A.    Plaintiff Is Not Entitled to Civil Authority Coverage as a Matter of Law ........... 10

        1.    Civil Authority Coverage Does Not Apply Because the FAC Admits the Order Did Not "Prohibit Access" to Plaintiff's Premises ..................................................................................... 11

        2.    Civil Authority Coverage Does Not Apply Because the FAC Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property" ................................................................ 14

        3.    Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus .......................................................... 15

    B.    Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law ................................................................. 22

        1.    The FAC Fails to Plead Any "Direct Physical Loss of or Damage to" Property at the Insured Premises ..................................... 22

        2.    Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of Insurance Policy Interpretation ........................ 27

        3.    Plaintiff's Alleged Losses Were Not Caused by a Covered Cause of Loss ..................................................................................... 29

    C.    Dismissal of the Sole Cause of Action Is Proper Because Plaintiff Is Not Entitled to Any of His Requested Declarations or Damages ............... 32

V.    CONCLUSION ............................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
    763 N.Y.S.2d 243 (N.Y. App. Div. 2003) ............................................................13

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
    67 F. App'x 248 (5th Cir. 2003) (unpublished) ....................................................12

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
    308 F. Supp. 2d 331 (S.D.N.Y. Mar. 12, 2004) ...................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................9

*Backroads Corp. v. Great Northern Ins.*,
    2005 WL 1866397 (N.D. Cal. 2005) .....................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................9

*Brightwell v. Lehman*,
    2006 WL 931702 (W.D. Pa. Apr. 10, 2006) ..........................................................9

*Bruni v. City of Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016) ...................................................................................9

*By Dev., Inc. v. United Fire & Cas. Co.*,
    2006 WL 694991 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir.
    2006) ......................................................................................................................14

*Certain Underwriters at Lloyd's London v. Creagh*,
    2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd*, 563 Fed. App'x 209 (3d
    Cir. 2014) ...............................................................................................................17

*Clarke v. State Farm Fla. Ins.*,
    123 So. 3d 583 (Fla. Dist. Ct. App. 2012) ............................................................17

*Collins v. Mary Kay, Inc.*,
    874 F.3d 176 (3d Cir. 2017) ...................................................................................9

*Commstop, Inc. v. Travelers Indemn. Co. of Conn.*,
    2012 WL 1883461 (W.D. La. 2012) ......................................................................13

*Connelly v. Lane Const. Corp.*,
    809 F.3d 780 (3d Cir. 2016) ...................................................................................9

*In re: COVID-19 Business Interruption Protection Insurance Litigation*,
  MDL No. 2942 ........................................................................................................1

*Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*,
  774 N.Y.S.2d 710 (N.Y. App. Div. 2004) .........................................................30

*Dae Assocs., LLC v. AXA Art Ins. Corp.*,
  158 A.D.3d 493 (N.Y. App. Div. 2018) .............................................................24

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
  636 F.3d 683 (5th Cir. 2011) ........................................................................ 14-15

*Doe v. State Farm Fire & Cas. Co.*,
  2015 WL 11083311 (N.H. Sept. 21, 2015) ........................................................17

*Fasano v. Allstate Indem. Co.*,
  2017 WL 3215420 (E.D. Pa. July 28, 2017) ........................................................2

*Gavrildes Mgmt. Co. v. Michigan Ins. Co.*,
  Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) ...................................25

*Guardian Life Ins. Co. of Am. v. Zerance*,
  479 A.2d 949 (Pa. 1984) .............................................................10, 17, 19, 21

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
  486 S.E.2d 249 (N.C. App. 1997) .................................................................24, 28

*HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*,
  527 N.E.2d 1179 (Mass. App. Ct. 1988) ...........................................................24

*Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*,
  858 F.2d 128 (3d Cir. 1988).................................................................................10

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*,
  127 A.D.3d 922 (N.Y. App. Div. 2015) .............................................................31

*J. O. Emmeric & Assocs., Inc. v. State Auto Ins. Cos.*,
  2007 WL 9775576 (S.D. Miss. Nov. 19, 2007)..................................................24

*Jernigan v. Nationwide Mut. Ins. Co.*,
  2006 WL 463521 (N.D. Cal. Feb. 27, 2006) ......................................................30

*Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*,
  2014 WL 1041831 (S.D.N.Y. Mar. 18, 2014) ....................................................31

*Johnson v. Dollinger*,
  2019 WL 1596340 (E.D. Pa. Apr. 12, 2019) ........................................................9

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.*
*Co. of Hartford,*
  2007 WL 2489711 (M.D. La. Aug. 29, 2007) ...................................................13

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,*
  2020 WL 886120 (D.S.C. Feb. 24, 2020) ........................................................15

*Lambi v. Am. Family Mut. Ins. Co.,*
  498 F. App'x 655 (8th Cir. 2013) ...................................................................17

*Madison Const. Co. v. Harleysville Mut. Ins. Co.,*
  735 A.2d 100 (Pa. 1999) .................................................................................17

*Mamlin v. Genoe,*
  17 A.2d 407 (Pa. 1941) ...................................................................................20

*Motorists Mutual Ins. Co. v. Hardinger,*
  131 F. App'x 823 (3rd Cir. 2005) ...................................................................26

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,*
  187 Cal. App. 4th 766 (Cal. Ct. App. 2010) ...................................................27

*Nationwide Mut. Ins. Co. v. West,*
  807 A.2d 916 (Pa. Super. Ct. 2002) ...............................................................10

*Nevers v. Aetna Ins. Co.,*
  546 P.2d 1240 (Wash. Ct. App. 1976) .............................................................24

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,*
  17 F. Supp. 3d 323 (S.D.N.Y. 2014) ..........................................................24, 28

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.,*
  2014 WL 12480022 (N.D. Ga. May 23, 2014) .................................................24

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.,*
  2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ..............................................13, 15

*Patula v. Nw. Nat. Ins. Co. of Milwaukee, Wis.,*
  478 A.2d 488 (Pa. Super. Ct. 1984) ...............................................................17

*Paylor v. Hartford Ins. Co.,*
  640 A.2d 1234 (Pa. 1994) ...............................................................................19

*Pennsylvania Nat. Mut. Cas. Co. v. Black,*
  916 A.2d 569 (Pa. 2007) .................................................................................18

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John,*
  106 A.3d 1 (Pa. 2014) ..............................................................................10, 16

iv

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993)................................................................2

*Pentair, Inc. v. American Guar. and Liab. Ins. Co.*,
  400 F.3d 613 (8th Cir. 2005) ..............................................................24

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
  385 F. Supp. 2d 280 (S.D.N.Y. 2005)...........................................12, 28

*Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3d Cir. 2002)...........................................................25-27

*Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*,
  2007 WL 9703576 (S.D. Fla. Oct. 19, 2007)......................................21

*Riccio v. Am. Republic Ins. Co.*,
  705 A.2d 422 (Pa. 1997) .....................................................................27

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
  302 A.D.2d 1 (N.Y. App. Div. 2002) ...........................................23, 28

*Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*,
  2006 WL 2850465 (D. Or. Sept. 29, 2006) ........................................28

*Seiler v. Am. Int'l Ins. Co.*,
  71 F. App'x 951 (3d Cir. 2003) ..........................................................20

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
  2010 WL 2696782 (M.D. Pa. July 6, 2010)...................................11, 13

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
  No. 20 Civ. 3311 (VEC) ................................................................19, 23

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
  2008 WL 450012 (S.D. Tex. Feb. 15, 2008) .................................14, 15

*Southern Hospitality, Inc. v. Zurich American Ins.*,
  393 F.3d 1137 (10th Cir. 2004) .....................................................11, 12

*Syufy Enterprises v. The Home Insurance. Co. of Indiana*,
  1995 WL 129229 (N.D. Cal. Mar. 21, 1995).......................................12

*Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*,
  1995 WL 70152 (Minn. Ct. App. Feb. 21, 1995) ...............................25

*Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*,
  651 F. Supp. 2d 332 (E.D. Pa. 2009) ............................................28, 29

*Toner v. GEICO Ins. Co.*,
  262 F. Supp. 3d 200 (E.D. Pa. 2017) ................................................................2

*Triangle Publications, Inc. v. v. Liberty Mutual Insurance Company*,
  703 F. Supp. 367, 369 (E.D. Pa. Jan. 4, 1989).............................................10

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
  439 F.3d 128 (2d Cir. 2006).........................................................................15

*Wexler Knitting Mills v. Atl. Mut. Ins. Co.*,
  555 A.2d 903 (Pa. Super. Ct. 1989).............................................................17

*Williams v. GEICO Gov't Employees Ins. Co.*,
  32 A.3d 1195 (Pa. 2011)...............................................................................20

**Statutes**

28 U.S.C. § 1407.................................................................................................1

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 10...............................................................................................2

Fed. R. Civ. P. 12.........................................................................................9, 32

**Other Authorities**

COUCH ON INSURANCE § 148:46 ....................................................................27

Stephan Ludwig, PhD and Alexander Zarbock, MD, *Coronaviruses and SARS-CoV-2: A Brief Overview*, ANESTH ANALG. (Apr. 20, 2020) (available at
  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7173023/)........................18

Richard P. Lewis, et al., *Here We Go Again: Virus Exclusion for COVID-19 and Insurers*, PROPERTYCASUALTY360 (Apr. 7, 2020),
  https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/). (Apr. 7, 2020) .........................................19

## I.       INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways.   But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

Plaintiff Eric R. Shantzer, DDS d/b/a Richboro Dental Excellence ("Plaintiff" or "Shantzer") asks this Court to declare that he is entitled to insurance coverage for the claimed business income losses of his dental practice, allegedly caused by orders issued by Pennsylvania Governor Tom Wolf and the Pennsylvania Department of Health to combat the spread of COVID-19 (the "Orders").[1] But Plaintiff ignores the material terms of his Travelers Casualty Insurance Company of America ("Travelers") insurance policy (the "Policy"), which does not provide coverage for his claimed losses.

The First Amended Complaint ("FAC") focuses primarily on Civil Authority coverage, which has three essential prerequisites: (1) "action of civil authority that *prohibits access* to the described [i.e., insured] premises"; (2) the civil authority action is "*due to direct physical loss of or damage to property* at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises"; and (3) the direct physical loss of or damage to property is "*caused by*

---

[1] Other similar COVID-19-related suits seeking coverage for business income losses have been filed by other plaintiffs against other insurers in this Court, and similar cases are pending in numerous other federal and state courts across the country. Two motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 have been filed with the Judicial Panel on Multidistrict Litigation ("JPML") in *In re: COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942. Travelers has opposed the motions for transfer and coordination or consolidation. The JPML hearing on the motions is scheduled for July 30, 2020.

*or resulting from a Covered Cause of Loss*." (Doc. 14-1, at p. 34 of 174 (emphasis added)).[2] The facts alleged demonstrate that Plaintiff cannot satisfy any of these three essential requirements. *First*, Plaintiff fails to allege facts capable of establishing that the Orders "prohibited access" to his premises.  To the contrary, in the FAC, Plaintiff acknowledges that emergency or urgent treatment in a dental office was permitted under the Orders and alleges he did not perform such services because of a lack of personal protection equipment ("PPE"). (FAC, ¶ 61). Courts nationwide have repeatedly held that to "prohibit access" requires that government authorities completely prevent access to the premises.  Plaintiff's admission that, under the Orders, Plaintiff was permitted to provide emergency/urgent treatment at his offices is fatal to his claim for Civil Authority coverage.

Second, Plaintiff fails to allege that the Orders were "due to direct physical loss of or damage to property at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises." To the contrary, Plaintiff alleges, and the Orders reflect, that they were issued for purposes of "social distancing" and to slow the spread of COVID-19. (*E.g.*, FAC, ¶¶ 48, 72; Doc. 14-2, at p. 2 of 4).

Third, any claimed physical loss of or damage to property elsewhere was not caused by a Covered Cause of Loss. The Policy includes an explicit exclusion of *any* type of coverage,

---

[2] Because the Policy is attached as Exhibit 1 to the FAC, the Court may properly consider it on this motion. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that, on motion to dismiss, court may consider "exhibits attached to the complaint and matters of public record"); *see also Fasano v. Allstate Indem. Co.*, 2017 WL 3215420, *2 n.2 (E.D. Pa. July 28, 2017) ("Because the insurance policy is integral to Plaintiff's Complaint, we may consider its contents on this Motion to Dismiss even though it was not attached to Plaintiff's Complaint."); *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 206 n.3 (E.D. Pa. 2017) ("In a breach of contract claim involving an insurance policy, the insurance policy at issue may be considered because the plaintiff's claims are based on that document.").

including Civil Authority coverage, for *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 14-1, at p. 150 of 174). Plaintiff attempts to avoid the virus exclusion—which Plaintiff does not dispute applies to the Coronavirus, (*see* FAC, ¶¶ 27, 35)—primarily by arguing that his claimed losses were caused by the Orders, and that the Orders somehow caused "physical loss" of property at non-insured locations, (*e.g.*, *id.*, ¶¶ 34-35). This argument fails as a matter of law because: (1) as Plaintiff alleges at great length in the FAC, the Orders were issued to slow the spread of the Coronavirus, and they cannot be divorced from the reason they were issued; and (2) under the Civil Authority provision, the alleged physical loss of or damage to property elsewhere must result in the civil authority action, not vice versa; to read the Policy as Plaintiff suggests would be nonsensical, and read the Civil Authority provision backwards.

To the extent that, in addition to seeking Civil Authority coverage, Plaintiff also seeks coverage under the Policy's Business Income and Extra Expense provisions, those provisions require a necessary suspension of business operations caused by (1) "direct physical loss of or damage to property at [Plaintiff's] premises," and (2) such "loss or damage must be caused by or result from a Covered Cause of Loss." (Doc. 14-1, pp. 21-22 of 174). Again, Plaintiff's factual allegations fail to satisfy either of these essential requirements. Plaintiff does not allege that anything happened to any property at his offices; instead, he alleges that he was unable to use his offices to provide dental services because he lacked PPE. (FAC, ¶ 61). As discussed below, no court has ever held that the mere loss of use of property, without an accompanying *physical* alteration or manifestation, constitutes "direct physical loss of or damage to property at [the

insured] premises."[3]  Moreover, even if Plaintiff could allege the requisite physical loss of or damage to property at the insured premises, he has not pleaded and cannot plead that any such physical loss or damage to property was caused by a Covered Cause of Loss.

Finally, in addition to the virus exclusion, the Policy includes other applicable exclusions, including an Acts or Decisions exclusion and an Ordinance or Law exclusion, (Doc. 14-1, at pp. 41, 45 of 174), both of which preclude coverage for loss or damage caused by a governmental order of the type at issue here (apart from a covered claim for Civil Authority coverage, and, again, Plaintiff has failed to satisfy the requirements for Civil Authority coverage). Thus, even if one were to assume for purposes of argument that the virus exclusion does not apply (which it does), there still would be no coverage, as a matter of law.

Because the FAC does not plead facts sufficient to support Plaintiff's entitlement to coverage under the Policy, Plaintiff is not entitled to the declaratory relief sought. And, again, even if Plaintiff could have pled the factual requirements for coverage, Plaintiff's alleged financial losses—which result from the Coronavirus—would still be *expressly excluded* by the virus exclusion (and other applicable exclusions). As a result, the FAC should be dismissed with prejudice because, as a matter of law, Plaintiff has not pleaded, and cannot plead, facts capable of demonstrating entitlement to coverage under the Policy.

---

[3] Even if one were to assume for purposes of argument that the presence of a virus somehow suffices to constitute direct physical loss of or damage to property (which it does not), that assumption would not help Plaintiff.  The FAC acknowledges that "Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Premises."  (FAC, ¶ 82).

## II.     PROCEDURAL HISTORY AND ALLEGED FACTS

### A.     This Lawsuit

Plaintiff owns and operates two dental offices in Richboro and Southampton, Pennsylvania (the "Offices"). (FAC, ¶ 9). He commenced this action on April 30, 2020, against "Defendant, Travelers Casualty Insurance Company of America and/or The Travelers Indemnity Company."[4] (Doc. 1, at p. 1). Plaintiff alleges that the Policy insures losses of "business income and additional expenses" that are "a result of the Orders" relating to the "Coronavirus" and the "global pandemic." (FAC ¶¶ 2, 10-13, 15, 17, 29, 47-49, 58-59, 75). The Policy, which is attached as Exhibit 1 to the FAC, was issued by Travelers Casualty Insurance Company of America. (*See* Doc. 14-1, p. 5 of 174).

According to the FAC, on March 19, 2020, Governor Wolf issued "an Order requiring all non-life-sustaining businesses in [the] Commonwealth to cease operations and close all physical locations." (FAC, ¶ 48; Doc. 14-3). The FAC alleges that the Orders were issued because the "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID-19" and to "mitigate health risks to the public by attempting to prevent COVID-19 contamination." (FAC, ¶¶ 49, 72). Plaintiff admits, however, that emergency/urgent treatment performed in a dental office was exempt from the Orders. (*Id.*, ¶¶ 60-61). Plaintiff alleges that he did not provide emergency/urgent services because "he was not

---

[4] The Policy reflects that it was issued by defendant Travelers Casualty Insurance Company of America, not by defendant The Travelers Indemnity Company ("Travelers Indemnity"). (Doc. 14-1, p. 5 of 174). Thus, Travelers Indemnity is entitled to dismissal with prejudice not only because, as set forth herein, Plaintiff has not pleaded, and cannot plead, facts capable of demonstrating entitlement to coverage under the Policy, but also because Plaintiff has failed to allege any basis for suing Travelers Indemnity, which did not issue the Policy that is the subject of Plaintiff's sole cause of action for declaratory relief.

in possession of the Personal Protection Equipment ('PPE') necessary," which was "difficult if not impossible to obtain." (*Id.*, ¶ 60). Plaintiff expressly acknowledges that he is *not* seeking a determination that the Coronavirus was "physically in or at the Insured Properties." (*Id.*, ¶ 82).

Plaintiff seeks a declaration that he is entitled to coverage for business income and extra expense losses, including under the Policy's Civil Authority provision. (FAC, ¶¶ 14, 15, 75, 78). The FAC frames nine purported insurance coverage issues for which Plaintiff seeks declaratory judgment: (1) that the Orders "constitute a prohibition of access to Plaintiff's Insured Properties"; (2) that the "prohibition of access by the Orders is specifically prohibited access as defined in the Policy"; (3) that the Orders "trigger coverage under the Policy"; (4) "that the Policy provides coverage to Plaintiff for any current and future closures in Bucks County due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters"; (5) "that the Policy's exclusions for virus and bacteria do not apply to the circumstances presented in the lawsuit and the kind and types of damages and losses suffered by Plaintiff"; (6) "that Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders violates public policy"; (7) that "under the circumstances of this Pandemic and the entry" of the Orders, Plaintiff "had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulting in Plaintiff suffering business losses, business interruption and extended expenses is therefore a covered expense"; (8) "that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus"; and (9) that "the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured

Properties or in the immediate area of the Plaintiff's Insured Properties."  (FAC, pp. 16-17 (Prayer for Relief)).

**B.      Contract Language At Issue**

**1.      The Relevant Coverage Provisions**

Plaintiff purchased from Travelers an Office Pac Policy, a type of insurance policy for businesses and other commercial organizations, which insured his business personal property (such as dental equipment and office furniture) from covered causes of loss (such as a fire or windstorm). When a covered cause of loss results in physical loss of or damage to the insured property which forces Plaintiff to suspend his operations, the Policy also provides limited coverage for business income losses and extra expenses incurred by Plaintiff during the period of restoration. For example, in the event of a fire that requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"—i.e., while the repairs are being made. The Business Income and Extra Expense coverage provides, in relevant part:

> **a.  Business Income**
>
> . . .
>
> **(2)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss. . . . .
>
> . . .
>
> **b.  Extra Expense**
>
> **(1)** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> . . .

7

(Doc. 14-1, pp. 21-22 of 174). "Covered Causes of Loss" are "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . [e]xcluded[.]"  (*Id.* at pp. 22-23 of 174).

In the provision entitled "Civil Authority," which is the focal point of the FAC, coverage for Business Income and Extra Expense resulting from a "Covered Cause of Loss" is extended to:

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by <u>action of civil authority that prohibits access to the described premises</u>. The civil authority action must be <u>due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises</u>, <u>caused by or resulting from a Covered Cause of Loss</u>.

(*Id.* at p. 34 of 174 (underscores added)).   As highlighted, three key requirements for this coverage to apply are: (i) a civil authority action must "prohibit" access to the insured's premises, (ii) the civil authority action must be "due to direct physical loss of or damage to property" at non-insured locations within 100 miles of the insured premises, and (iii) such physical loss of or damage to property must be "caused by or resulting from a Covered Cause of Loss" (i.e., a cause that is not excluded from coverage).

### 2.      The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy, "including but not limited to forms or endorsements that cover . . . business income, extra expense, rental value or action of civil authority."  (Doc. 14-1, at p. 150 of 174).  The exclusion concisely states in plain terms that:

> <u>We will not pay for loss or damage caused by or resulting from any virus</u>, bacterium or other microorganism <u>that induces or is capable of inducing physical distress, illness or disease</u>.

(*Id.* (underscores added)).

8

### III. LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three-step process for applying *Twombly* and *Iqbal*). A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all of the complaint's well-pleaded facts as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). Excepted from this presumption of truth are any "legal conclusions" couched as factual allegations, *id.*, and any allegations in the complaint which are "contradicted by the documents attached to the complaint," *Brightwell v. Lehman*, 2006 WL 931702, *3 (W.D. Pa. Apr. 10, 2006); *Johnson v. Dollinger*, 2019 WL 1596340, *6 n.6 (E.D. Pa. Apr. 12, 2019) ("[A]llegations in the complaint that contradict facts of which the court may take judicial notice do not need to be accepted as true" in deciding a motion to dismiss.).

Under Pennsylvania law,[5] the language of an insurance policy "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut.*

---

[5] Pennsylvania law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., Pennsylvania. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Pennsylvania courts apply "the law of the state having the most significant contacts

*Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). "When the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Id.* Moreover, "policy terms should be read to avoid ambiguities," and "a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy." *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988); *see also Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984) ("We may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy.").

## IV.    ARGUMENT

The facts pleaded in the FAC demonstrate as a matter of law that Plaintiff cannot prove an entitlement to coverage under the Policy because he fails to satisfy any of the requirements for coverage under the Civil Authority, Business Income or Extra Expense coverages. Accordingly, the FAC's sole cause of action for declaratory relief regarding coverage under the Policy should be dismissed with prejudice.

### A.    Plaintiff Is Not Entitled to Civil Authority Coverage as a Matter of Law

Civil Authority coverage insures certain business income losses and expenses if the following three prerequisites are satisfied: (1) the business income and extra expense losses are "caused by action of civil authority that *prohibits access* to the [insured] premises"; (2) the civil authority action is "*due to direct physical loss of or damage to property* at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises"; and (3) the direct

---

or relationships with the contract." *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa. Super. Ct. 2002). Here, the Policy was issued to Shantzer at an address located in Pennsylvania and insured property located in Pennsylvania. (Doc. 14-1, p. 5 of 174). Accordingly, Pennsylvania law applies here. *Triangle Publications, Inc. v. v. Liberty Mutual Insurance Company*, 703 F. Supp. 367, 369 (E.D. Pa. Jan. 4, 1989) (Pennsylvania law applied where insured was domiciled in and insured property was located in Pennsylvania).

physical loss of or damage to property is "*caused by or resulting from a Covered Cause of Loss.*" (Doc. 14-1, p. 34 of 174 (emphasis added)). The FAC fails to satisfy any of these three requirements. First, Plaintiff concedes that access was not prohibited (rather, access to the premises was permitted for emergency treatment, for example, although Plaintiff did not perform emergency treatment due to a lack of PPE). Second, the FAC alleges, and the Orders reflect, that they were issued to slow the spread of the COVID-19 virus, not due to any physical loss of or damage to property. Third, the Policy explicitly excludes losses "resulting from any virus" from its Covered Causes of Loss. Because Plaintiff's allegations fail to satisfy any of the three requirements for Civil Authority coverage, dismissal is warranted as to Plaintiff's requests for declaratory relief regarding this coverage.

> 1.   **Civil Authority Coverage Does Not Apply Because the FAC Admits the Order Did Not "Prohibit Access" to Plaintiff's Premises**

Plaintiff's allegations fail to establish the first requirement for Civil Authority coverage: that the civil authority action "prohibit access" to the described premises, Plaintiff's dental offices.  The FAC acknowledges that the Orders permitted dental work to be performed if "failure to do so would be detrimental to the health of a patient," and alleges that Plaintiff did not perform any such work because he "lack[ed] the necessary and needed PPE" that "was difficult if not impossible to obtain." (FAC, ¶¶ 60-61).  These allegations do not satisfy the prohibition of access requirement for Civil Authority coverage under the plain language of the Policy.

Courts interpreting civil authority provisions uniformly require the phrase "prohibit access" to mean to "formally forbid" or "prevent" any access to the premises.  *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). Limitations restricting access are not sufficient. For example, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782 (M.D. Pa. July 6, 2010), the court explained that "where the action of a

civil authority merely hinders access to the covered premises, *without completely prohibiting access*, federal courts have held that such action is not covered" under civil authority provisions. *Id.* at *4 (emphasis added). The court found no coverage where a "majority of the customers" may not have been able to reach the insured's ski resort, but there was no "*complete inability* to access the premises." *Id.* at *5 (emphasis added). Similarly, in *Syufy Enterprises v. The Home Insurance. Co. of Indiana*, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995), the court addressed civil authority coverage for businesses affected by "dawn-to-dusk" curfews imposed by cities during the Rodney King riots. *Id.* at *1. A movie theater operator cancelled showings during the curfew period, presumably because customers could not attend. *Id.* at *1. The court found no coverage because the orders did not "deny access to a Syufy theater" or "prohibit[] any individual from entering a theater." *Id.* at *2. That the insured "opted to close its theaters" as a result of the curfews did not satisfy the policy requirement. *Id.*

Civil authority coverage cases after the September 11, 2001 terrorist attacks reinforced this distinction between orders that "prohibit access" to an insured premises and those that limit business operations, even severely, but without prohibiting access. Courts across the country uniformly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" to the various businesses. *See Southern Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d

12

280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, 2005 WL 1866397, *6 (N.D. Cal. 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores.). Likewise, post-September 11th orders imposing "vehicular traffic restrictions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. Mar. 12, 2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).

Here, Plaintiff acknowledges that the Orders permitted him to perform emergency or urgent treatment in his dental offices, but he did not do so because of a lack of PPE. (FAC, ¶¶ 60-61). The Policy, however, requires that an applicable order "prohibit" access, not limit access, and limited availability or unavailability of supplies is not relevant to this criterion for coverage. Courts uniformly hold that the same civil authority provision at issue here requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage. *Ski Shawnee*, 2010 WL 2696782 at *5; *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, 2012 WL 1883461, *9 (W.D. La. 2012) ("'Civil Authority' provision . . . require[s]" insured to show "access to [insured property] was totally and completely prevented—i.e., made impossible—by [the civil authority action]."); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (M.D. La. Aug. 29, 2007) (holding coverage not triggered by order that "encouraged" residents to stay off streets before

13

hurricane, because it did not "actually and completely prohibit[] access to the insured premises");

*By Dev., Inc. v. United Fire & Cas. Co.*, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd*, 206

F. App'x 609 (8th Cir. 2006). Plaintiff has not and cannot allege that the Orders "completely

prohibited" access to his business premises while permitting emergency or urgent treatment.

> ### 2.   Civil Authority Coverage Does Not Apply Because the FAC Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property"

Plaintiff's allegations also fail to satisfy the second requirement for Civil Authority

coverage: that "[t]he civil authority action must be *due to direct physical loss of or damage to*

*property* at locations, other than [the insured] premises, that are within 100 miles of the [insured]

premises, caused by or resulting from a Covered Cause of Loss." (Doc. 14-1, at p. 34 of 174

(emphasis added)). Courts have consistently held that similar policy provisions require "a *causal*

*link* between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins.*

*Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics,*

*P.A. v. CNA Fin. Corp.*, 2008 WL 450012, *8 (S.D. Tex. Feb. 15, 2008) (words "due to" in civil

authority provision require a "close causal link" between property damage and civil authority

order).

Here, Plaintiff alleges that the Orders were required due to the need for "social

distancing" and other forms of reducing "unnecessary gatherings, personal contact and

interaction," in order to reduce "the risk of transmission and the risk of community spread of

COVID-19." (FAC, ¶¶ 48, 49; *see also id.*, ¶ 70 (Orders issued "to protect the public and

minimize the risk of spread of disease"); Doc. 14-2, at p. 2 of 4 (declaring state of emergency

based on need to "mitigate the spread of COVID-19"); Doc. 14-3, at p. 2 of 3 (closing certain

businesses due to "public health emergency" created by COVID-19)). None of the Orders relied

upon and attached to the FAC make *any* reference to the order being issued "due to" any

property damage. (Docs. 14-2, 14-3, 14-4, 14-5, 14-6). This is another independent reason why Plaintiff is not entitled to coverage under the Civil Authority provision. *See, e.g., Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of property damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops*, 2004 WL 5704715 at *7 (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing property damage); *South Texas Med. Clinics*, 2008 WL 450012 at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico").

### 3. Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus

Plaintiff's allegations also fail to satisfy the third requirement for Civil Authority coverage: pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken due to physical loss or damage "*caused by or resulting from a Covered Cause of Loss*." (Doc. 14-1, at p. 34 of 174 (emphasis added)). As Plaintiff acknowledges in the FAC, an *excluded* risk of loss is *not* a Covered Cause of Loss. (FAC, ¶ 16).

The FAC focuses heavily on the Coronavirus. (*See*, *e.g.*, *Id.*, ¶¶ 37-57, 62-69). Plaintiff alleges that the Orders were issued to reduce "the risk of transmission and the risk of community spread of COVID-19." (*Id.*, ¶ 49; *id.*, ¶ 70 (Orders were issued "to protect the public and minimize the risk of spread of disease"); *see also* Doc. 14-2, at p. 2 of 4; Doc. 14-5, at p. 3 of 4; FAC, ¶ 78(d) (seeking declaration that Policy provides coverage for civil authority closures "due to physical loss or damage directly or indirectly from the Coronavirus"); *id.*, ¶ 81 (similar).[6] Plaintiff specifically alleges that "Plaintiff could not use its property for its intended purpose" and "[t]herefore, ***the novel coronavirus has caused*** 'direct physical loss of or damage to' Plaintiff's property insured under the policy." (FAC, ¶ 62 (emphasis added)). As Paragraph 62 of the FAC admits, the losses alleged are caused by or result from the Coronavirus, a risk of loss that falls squarely within the Policy's broad exclusion of "loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 14-1, at p. 150 of 174 (emphasis added)). The exclusion expressly applies to Civil Authority coverage.  (*Id.* ("The exclusion . . . applies to . . . forms or endorsements that cover business income, extra expense, rental value or *action of civil authority*." [emphasis added])).

Pennsylvania law instructs that "[w]hen the language of an insurance policy is plain and unambiguous, a court is bound by that language." *St. John*, 106 A.3d at 14. Pennsylvania courts evaluating policy exclusions foreclosing coverage for losses "caused by" or "resulting from" specified noncovered risks have found the provisions unambiguous and applied their plain

---

[6] Although Travelers does not seek adjudication of this issue, which is beyond the scope of this motion, the coronavirus (SARS-CoV-2) that causes COVID-19 disease does not and cannot cause physical damage to property.

meaning.  *See, e.g.*, *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 555 A.2d 903, 905 (Pa. Super. Ct. 1989); *Patula v. Nw. Nat. Ins. Co. of Milwaukee, Wis.*, 478 A.2d 488, 490 (Pa. Super. Ct. 1984).[7]

There is no question that the plain language of the virus exclusion controls here.  The FAC specifically (and necessarily) describes the "Coronavirus" as a "virus" and acknowledges that it is "deadly," causes "illness" and "disease," and poses serious risks to human health. (FAC, ¶¶ 41, 69-70).  Thus, as alleged by Plaintiff, the Coronavirus is a virus "capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion.  (Doc. 14-1, at p. 150 of 174). The Coronavirus is not a Covered Cause of Loss and therefore cannot give rise to Civil Authority coverage.

Nonetheless, Plaintiff explicitly requests declarations that coverage would exist for losses caused by or resulting from the Coronavirus (or the "pandemic"). (FAC, ¶¶ 78(d), 81). To grant Plaintiff's requests would "distort the meaning of the [virus exclusion's] language or resort to a strained contrivance" thereof. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Such a result would effectively "rewrite" the Policy, *Guardian Life*, 479 A.2d at 953, and "[t]o allow recovery . . . despite the unambiguous language of the insurance policy would be to provide coverage for which premiums have not been paid." *Pennsylvania Nat. Mut.*

---

[7] While few courts have had occasion to construe a virus or microorganism exclusion, courts have enforced them in accordance with their clear and unambiguous language.  *See, e.g.*, *Certain Underwriters at Lloyd's London v. Creagh*, 2013 WL 3213345, *4 (E.D. Pa. June 26, 2013) (holding that exclusion for "any loss . . . arising out of or relating to . . . [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria from dead body), *aff'd*, 563 Fed. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*, 2015 WL 11083311, *2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole, would understand the policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x 655, 656 (8th Cir. 2013) ("[T]he policy excluded bodily injury arising out of the actual or alleged transmission of a communicable disease, and infecting another with the HIV virus clearly falls within the plain and ordinary meaning of the transmission of a communicable disease."); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding exclusion unambiguous).

*Cas. Co. v. Black*, 916 A.2d 569, 581 (Pa. 2007) (noting that "[w]e have repeatedly enforced contractual language to avoid *gratis* coverage").

In the FAC, Plaintiff added various allegations seeking to avoid application of the virus exclusion on various grounds, all of which are without merit.

*First*, Plaintiff alleges that, "upon information and belief," the virus exclusion was developed by the Insurance Services Office, Inc. ("ISO"), "in response to the SARS situation that occurred in or around 2005-2006, which was not a Pandemic" and allegedly was not intended to exclude coverage for a pandemic. (FAC, ¶ 25). Plaintiff further alleges that "the Virus Exclusion was first permitted by state insurance departments due to misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses." (FAC, ¶ 26). The foregoing allegations state no plausible legal basis on which the Court could disregard the virus exclusion and strike it from the Policy, as Plaintiff apparently desires. Rather, the allegation that the virus exclusion was developed in response to SARS (severe acute respiratory syndrome) strongly supports Travelers' position that the virus exclusion plainly and unambiguously applies. "COVID-19" is shorthand for Coronavirus Infectious Disease 2019, and the virus that gave rise to COVID-19 is known as SARS-CoV-2 because it is the same type of virus as the first SARS virus.[8]

An online article cited in the FAC, authored by attorneys who specialize in representing policyholders in insurance coverage litigation, quotes a statement by ISO as follows:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto

---

[8] *See*, *e.g.*, Stephan Ludwig, PhD and Alexander Zarbock, MD, *Coronaviruses and SARS-CoV-2: A Brief Overview*, ANESTH ANALG. (Apr. 20, 2020) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7173023/) (explaining relationship between the original SARS-CoV virus first identified in 2002, and the SARS-CoV-2 virus first identified in December 2019).

> unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.[9]

This statement demonstrates that, contrary to Plaintiff's allegations, the virus exclusion applies precisely to pandemics such as that which is now occurring as a result of SARS-CoV-2 and COVID-19. Moreover, Plaintiff's reliance on a statement by ISO that property insurance policies had not been a source of recovery for disease-causing agents is misplaced. Almost 100 years had passed since the last pandemic and, in any event, viruses and other disease causing agents harm people and not property. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (Ex. A hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").[10]

*Second*, Plaintiff vaguely asserts that Travelers' denial of coverage was somehow a violation of public policy. (FAC, ¶ 53(e), 78(f)). Under Pennsylvania law, "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994) (*quoting Guardian Life Insurance Co. v. Zerance*, 479 A.2d 949, 954 (Pa. 1984)).

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy].

---

[9] FAC, ¶ 26 (quoting Richard P. Lewis, et al., *Here We Go Again: Virus Exclusion for COVID-19 and Insurers*, PROPERTYCASUALTY360 (Apr. 7, 2020), https://www.propertycasualty360. com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/).

[10] Plaintiff's allegations are also immaterial because Plaintiff does not allege that Travelers adopted or relied upon any alleged statement by ISO.

*Id.* (*quoting Mamlin v. Genoe*, 17 A.2d 407, 409 (Pa. 1941)); *see also Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195, 1200, 1204 (Pa. 2011) ("We consistently have been reluctant to invalidate a contractual provision due to public policy concerns," and a policyholder "must meet a high burden to invalidate a contractual provision due to a conflict with public policy"; "it is not the proper function of this Court to weigh competing public policy interests; rather that task is best suited for the legislature."). Plaintiff alleges no basis on which this Court could invalidate the virus exclusion on public policy grounds. *See, e.g., Seiler v. Am. Int'l Ins. Co.*, 71 F. App'x 951, 954-55 (3d Cir. 2003) (explaining that "[t]he standard set by the Pennsylvania courts for determining whether a contract provision violates public policy is very high," and "[t]his Court cannot discern how [the insurer's] 'household exclusion' is so obviously against the public health, safety, morals, or welfare of Pennsylvania's citizens as to be violative of public policy.").

*Third*, Plaintiff maintains that the virus exclusion does not apply "because Plaintiff's losses were not directly caused by a virus," but "[i]nstead, Plaintiff's losses were caused by entry of Civil Authority Order[s] . . . to mitigate the spread of COVID-19." (FAC, ¶ 35). But under the plain language of the Civil Authority provision, the Orders themselves cannot be the Covered Cause of Loss. The Civil Authority provision states that "[t]he civil authority action must be due to direct physical loss of or damage to property at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises, caused by or resulting from a Covered Cause of Loss." (Doc. 14-1, at p. 34 of 174). The Covered Cause of Loss must cause the direct physical loss or damage that results in the civil authority action. Plaintiff's proposed interpretation, which appears to be that the "direct physical loss of or damage to property" was caused by the Orders, reads the Civil Authority provision backwards. The physical loss or damage must cause the civil

authority action, not vice versa. *See also Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*, 2007 WL 9703576, *4 (S.D. Fla. Oct. 19, 2007) ("The order of civil authority cannot in any reasonable manner be construed as a 'peril.'").

Moreover, there can be no reasonable dispute that the virus was the cause of Plaintiff's alleged loss. Plaintiff's own allegations demonstrate that the Orders are inextricably intertwined with the reason they were issued: the Coronavirus. (*See, e.g.*, FAC, ¶ 49 (stating Orders issued to reduce "the risk of transmission and the risk of community spread of COVID-19"); *id.*, ¶ 70 (stating Orders issued "to protect the public and minimize the risk of spread of disease"). Plaintiff cannot avoid the application of the virus exclusion by recharacterizing its loss as being caused by Orders that were issued to slow the spread of the virus rather than being caused by the virus itself. Moreover, the virus exclusion expressly applies to the Civil Authority, Business Income and Extra Expense coverages. (Doc. 14-1, at p. 150 of 174).  A virus cannot, in and of itself, close a business; rather, some form of human intervention (such as by government order or business decision) is obviously required to cause a business income or extra expense loss. To adopt Plaintiff's theory that the Orders, divorced from their purpose, constitute a Covered Cause of Loss not only would fly in the face of Plaintiff's express allegations regarding the Orders, it would render the virus exclusion nugatory and "rewrite" the Policy. *Guardian Life*, 479 A.2d at 953.

Thus, as a matter of law, Plaintiff is not entitled to a declaration establishing Civil Authority coverage under the Policy because the FAC does not and cannot allege (1) that the Orders "prohibited access" to Plaintiff's premises; (2) that the Orders were "due to direct physical loss of or damage to property" within 100 miles of the insured premises; or (3) that the physical loss or damage to property was "caused by or resulting from a Covered Cause of Loss."

### B.   Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law

The focal point of the FAC is Civil Authority coverage. Yet Plaintiff states in passing that "the Policy provides business income coverage in the event that [the] Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties." (FAC, ¶ 78(h); *see also id.*, ¶ 81). The FAC also makes other passing references to Business Income and Extra Expense coverages. (*Id.*, ¶¶ 13, 15,18, 75). To the extent this is intended to plead a claim under the Business Income and Extra Expense provisions, this claim also fails as a matter of law.

The Policy's Business Income provision provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the [insured] premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (Doc. 14-1, at pp. 21-22 of 174). The Extra Expense provision similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.* at p. 22 of 174). Here, Plaintiff's allegations fail to satisfy either of these two essential requirements for Business Income and Extra Expense coverage.

### 1.   The FAC Fails to Plead Any "Direct Physical Loss of or Damage to" Property at the Insured Premises

The FAC includes allegations regarding the Coronavirus purportedly causing physical loss or damage generally, (*see* FAC, ¶ 37 (alleging that COVID-19 is "a cause of real physical loss and damage"); *id.*, ¶ 41 (alleging that "the deadly virus physically infects and stays on surfaces")), and suggests that the Coronavirus potentially *could* cause damage to Plaintiffs'

property.[11] Yet Plaintiff expressly disavows any suggestion that the Coronavirus was present in his own premises, affirmatively stating that he is *not* seeking "any determination of whether the Coronavirus is physically in or at the Insured Properties." (*Id.*, ¶ 82).[12]

Because Plaintiff cannot plead that any property at the locations described in the Policy was physically altered or impacted in any way, Plaintiff attempts to satisfy the "direct physical loss of or damage to property" requirement by alleging that "loss of use" of property constitutes "direct physical loss or damage," and that "Plaintiff could not use its property for its intended purpose." (FAC, ¶¶ 34, 62). Courts have repeatedly rejected similar arguments, and no court has *ever* held that a temporary restriction of the use of a property or even a required closure of a property as a result of a government order is a "direct physical loss of or damage to property." For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1 (N.Y. App. Div. 2002), a Broadway theatre was forced to cancel numerous performances of a musical when the city closed off the block on which it was located after scaffolding attached to a nearby building collapsed. *Id.* at 2-3. After its insurance claim was denied, the theatre owner sued its property insurer to recover for its business interruption losses. *Id.* at 4. Reversing the trial court's entry of summary judgment for the insured, the appellate court rejected the trial court's conclusion that "loss of" includes "loss of use" of property, and held that that "the plain meaning of the words

---

[11] Although beyond the scope of this motion, what the FAC describes would not constitute direct physical loss or damage as a matter of law. *See Social Life Magazine,* tr. at 5, 15 (Ex. A hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

[12] Plaintiff further alleges that "contamination of the Insured Property *would be* a direct physical loss requiring remediation to clean the surfaces," (FAC, ¶ 37 (emphasis added)), and that Plaintiff's premises are "susceptible" to contamination, (*id.*, ¶¶ 63, 64), again admitting that Plaintiff is not asserting that the virus is present in his offices. To the extent Plaintiff alleges that "[t]he virus is physically impacting the Insured Premises," (*id.*, ¶ 65), that allegation can only be read, consistent with the other allegations in the FAC, as meaning something other than that the virus "is physically in or at the Insured Properties," which is disavowed in Paragraph 82.

'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.* at 7 (citations omitted).

Other courts have rejected similar business interruption claims based on loss of use. *See, e.g.*, *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where heavy snowstorm made insured premises inaccessible); *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmeric & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, there was no "direct physical loss of or damage to" property).[13]

---

[13] Along the same lines, courts have repeatedly held that a defect in title to property which has the legal effect of depriving the insured of the property, is not a tangible, "physical loss," and therefore not covered by property insurance policies. *See Dae Assocs., LLC v. AXA Art Ins. Corp.*, 158 A.D.3d 493, 494 (N.Y. App. Div. 2018); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 527 N.E.2d 1179, 1180 (Mass. App. Ct. 1988); *Nevers v. Aetna Ins. Co.*, 546 P.2d 1240,

Consistent with all of these prior decisions, in the first decision to address this issue in a COVID-19 case, a Michigan Circuit Court judge recently granted the equivalent of a motion to dismiss, ruling from the bench that there were "no allegations of direct physical loss of or damage to . . . property" under the policy because that "has to be something with material existence," "[s]omething that is tangible," "that alters the physical integrity of the property." *Gavrildes Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30, tr. at 18-19 (Mich. Cir. Ct. July 1, 2020) (Ex. B hereto). The judge further stated that "it seems like the plaintiff is saying that the physical requirement is met because people were physically restricted from dine-in services [at the plaintiffs' restaurants]," "[b]ut, that argument is just simply nonsense [a]nd it comes nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Id.* at 20.

The Third Circuit has addressed the meaning of "direct physical loss or damage" in two cases where, as here, it was alleged that an insured could no longer use the insured premises for its intended purpose.  However, neither decision stands for the proposition that a loss of use, regardless of how it was caused, constitutes "direct physical loss or damage to property." Rather, under these decisions, the "direct physical loss or damage" requirement is satisfied only where a demonstrable, physical alteration of the property from an external cause results in a total loss of use or function.

In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), the Third Circuit was called upon to decide whether, under the law of New York or New Jersey, the existence of asbestos-containing building materials in a building constituted "direct physical loss or damage" to property within the meaning of commercial property policies.

---

1241 (Wash. Ct. App. 1976); *Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*, 1995 WL 70152, *2 (Minn. Ct. App. Feb. 21, 1995) (unpublished).

The Third Circuit answered the question in the negative, affirming the district court's entry of summary judgment for the insurers. *Id.* at 236. In so ruling, the court acknowledged that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," and then further stated:

> "[P]hysical loss or damage" occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility. The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage.

*Id.* at 235. Because the summary judgment record revealed no evidence of actual contamination or an imminent threat of asbestos contamination in any of the insured buildings, the court held that no "direct physical loss or damage" had occurred. *Id.* at 236.

A few years after deciding *Port Authority,* the Third Circuit, in an unpublished opinion, applied the same test to resolve a coverage dispute arising from bacterial contamination of property in Pennsylvania. In *Motorists Mutual Ins. Co. v. Hardinger,* 131 F. App'x 823 (3rd Cir. 2005), the insureds fell ill shortly after moving into a home they had just purchased. *Id.* at 824. After testing confirmed that the artesian well connected to the home was contaminated with dangerous levels of E-coli bacteria, the insureds vacated the premises and conveyed it back to their mortgagee. *Id.* The district court granted summary judgment for the insurer based on its determination that no "direct physical loss" had occurred. *Id*. at 825. In its unpublished decision vacating the lower court's ruling, the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the test for "direct physical loss or damage" articulated in *Port Authority,* and remanded the case to the district court so that a jury could decide "whether the functionality of

26

the [insured's] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable" by the presence of harmful E-coli bacteria. *Id.* at 826-27.[14]

*Port Authority* and *Motorists Mutual* are readily distinguishable on the basis that there was either a physical impact or physical manifestation at the insured property that allegedly made the premises uninhabitable or entirely unusable. Here, in contrast, Plaintiff's claimed "loss of use" does not involve any physical impact or manifestation at the insured premises. The FAC does not allege that Coronavirus was ever present in any of Plaintiff's dental offices, let alone that it contaminated any property in those offices to a point where the function or use of the offices was eliminated (assuming that were even possible where the virus can be readily eliminated by cleaning). Indeed, it bears repeating that Plaintiff expressly disavows the presence of Coronavirus in his offices. (FAC, ¶ 82). Thus, while the presence of Coronavirus within a building would not constitute "direct physical loss of or damage to property," that simply is not even claimed in this case.

### 2.    Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of Insurance Policy Interpretation

In several respects, Plaintiff's position is contrary to the basic principle of Pennsylvania insurance law that "an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument." *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997). *First*, when the Policy covers a

---

[14] Travelers does not concede that the unpublished opinion in *Motorists Mutual* correctly sets forth the law of Pennsylvania on the meaning of "direct physical loss of or damage to property," and maintains that Pennsylvania would likely follow the majority rule nationwide, under which "[t]hat the loss needs to be 'physical,' given the ordinary meaning of the term, is '*widely held to exclude alleged losses that are intangible or incorporeal*, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a *detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property*.'" *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) (quoting 10A Couch on Insurance § 148:46, pp. 148-81) (emphasis added).

Business Income or Extra Expense loss, the time period for such coverage is the "period of restoration," (Doc. 14-1, at pp. 21-22 of 174), which generally ends on "[t]he date when the property at the described premises *should be repaired, rebuilt or replaced* with reasonable speed and similar quality," (*id.* at p. 56 of 174 (emphasis added)). Courts have repeatedly recognized that this definition contemplates that Business Income coverage requires a *physical* change to insured property that is capable of being remedied through repair or replacement. *See, e.g. Newman Myers,* 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 ("The business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre*, 302 A.D.2d at 7-8 (similar analysis).

*Second*, the Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policy contains an express exclusion stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." (Doc. 14-1, at 43 of 174). Construing the phrase "direct physical loss or damage" to encompass a loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether. *See Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F. Supp. 2d 332, 344 n.3 (E.D. Pa. 2009) ("The Court must avoid interpreting the Policy in a way that makes any term meaningless or superfluous."); *see also Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*, 2006 WL 2850465, *1, *5-6 (D. Or. Sept.

28

29, 2006) (where well could not produce anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied).[15]

*Third*, if, as Plaintiff maintains, the mere loss of use of its insured premises following a governmental order restricting their operations constituted "direct physical loss of or damage to property," the Civil Authority provision, which is an "Additional Coverage" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Plaintiff's position were adopted, any action of civil authority that prohibits access to the insured premises within the meaning of the Civil Authority provision would constitute "direct physical loss of or damage to property at [the insured] premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policies to include the "Additional Coverage" for Civil Authority. Again, an insurance policy should not be construed in a manner that renders any of its provisions superfluous. *See Toffler Assocs.*, 651 F. Supp. 2d at 344 n.3. In addition to all of the other reasons set forth above, Plaintiff's allegations that the Business Income and Extra Expense coverages apply to a governmental order restricting the use of insured premises contravenes these basic principles of insurance policy interpretation and must be rejected.

> **3.    Plaintiff's Alleged Losses Were Not Caused by a Covered Cause of Loss**

Even if Plaintiff had alleged direct physical loss of or damage to property at the insured premises, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage: Plaintiff has not alleged a Covered Cause of Loss.  The virus

---

[15] Of course, when a covered cause of loss, such as a fire, results in physical loss of or damage to property and that causes a suspension of operations, the "loss of use" exclusion does not apply because the cause of the loss is the fire.

exclusion expressly applies to Business Income and Extra Expense coverage.  (Doc. 14-1, at p. 150 of 174 ("The exclusion . . . applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority." [emphasis added])).  The FAC focuses heavily on the Coronavirus, (FAC, ¶¶ 37-57, 62-69), and specifically alleges that "***the novel coronavirus has caused*** 'direct physical loss of or damage to' Plaintiff's property insured under the policy." (FAC, ¶ 62 (emphasis added)).  For the same reasons set forth in Section IV.A.3 above, the virus exclusion applies to Plaintiff's claim for Business Income and Extra Expense coverage, just as it applies to the Civil Authority coverage.

To the extent that Plaintiff attempts to end-run the virus exclusion by alleging that its claimed losses under the Business Income and Extra Expense coverages stem from the Orders rather than the Coronavirus, (*see, e.g.*, FAC, ¶ 35), in addition to the reasons set forth in Section IV.A.3 above, this argument also fails with respect to the Business Income and Extra Expense coverages because the Orders are a separately *excluded* cause of loss under the Acts or Decisions and Ordinance or Law exclusions.[16]

*First*, the Policy excludes "loss or damage caused by or resulting from . . . *[a]cts or decisions*, including the failure to act or decide, *of any* person, group, organization or *governmental body*." (Doc. 14-1, at p. 45 of 174 (emphasis added)).  Courts have held that similarly-worded Acts or Decisions exclusions are unambiguous and bar coverage for loss or damage caused by similar types of governmental orders. *See, e.g., Jernigan v. Nationwide Mut. Ins. Co*., 2006 WL 463521, at *10-11 (N.D. Cal. Feb. 27, 2006) (Acts or Decisions exclusion applied to loss caused by, among other acts or decisions, a town's "stop-work order"); *Cytopath*

---

[16] The Acts or Decisions and Ordinance or Law exclusions do not preclude Civil Authority coverage when the specific prerequisites for that coverage are satisfied. As discussed above, Plaintiff has not and cannot allege the prerequisites for such coverage.

*Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (Acts or Decisions exclusion barred coverage where "the real losses claimed herein resulted from refusal by the authorities to permit resumption of operations"); *Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, 2014 WL 1041831, *7 (S.D.N.Y. Mar. 18, 2014) (granting insurer's motion for partial summary judgment on Acts or Decisions exclusion where electric utility's decision to shut down power resulted in plaintiff's business income loss).

*Second*, the Policy's Ordinance or Law exclusion provides that "We will not pay for loss or damage caused directly or indirectly by . . . *[t]he enforcement of any ordinance or law . . . [r]egulating the* construction, *use* or repair of any property." (Doc. 14-1, at p. 41 of 174). As a New York appellate court has explained, this exclusion "clearly and unambiguously excludes coverage for losses caused directly or indirectly by the enforcement of any ordinance or law regulating the . . . use . . . of any property" and "excludes coverage for losses, including business income losses, caused by the enforcement of the law." *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924 (N.Y. App. Div. 2015) (holding that, where dental practice could not operate for eleven months as a result of town's enforcement of ordinance requiring plaintiff to obtain a certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses).

In summary, the Policy's Business Income and Extra Expense coverages apply only where the Plaintiff's business operations are suspended due to "direct physical loss of or damage to" property at insured premises caused by a Covered Cause of Loss. Because the FAC has not pled the existence of any direct physical loss of or damage to property at Plaintiff's premises, let alone that such physical loss of or damage to property is due to a Covered Cause of Loss,

Plaintiff's claims for declaratory relief in relation to Business Income and Extra Expense coverage fail as a matter of law and should be dismissed.

> ### C.   Dismissal of the Sole Cause of Action Is Proper Because Plaintiff Is Not Entitled to Any of His Requested Declarations or Damages

Because Plaintiff cannot demonstrate as a matter of law that he is plausibly entitled to coverage under the Policy's Civil Authority, Business Income or Extra Expense provisions, Plaintiff is not entitled to any of the declarations he seeks.   Plaintiff has specifically requested nine declarations pertaining to aspects of Civil Authority, Business Income and Extra Expense coverage under the Policy. (FAC, at pp. 16-17 (Prayer for Relief)).   Because no cognizable legal theory or set of facts has been alleged to sustain any of the requested declarations, the FAC should be dismissed.

## V.   CONCLUSION

For all of the reasons stated above, Plaintiff has failed to state any claim upon which relief may be granted. Thus, Travelers respectfully requests that the Court dismiss the FAC in its entirety and with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

*/s/ Richard L. Scheff*
Richard L. Scheff (Pa. Attorney No. 35213)
David F. Herman (Pa. Attorney No. 318518)
ARMSTRONG TEASDALE LLP
2005 Market Street, 29th floor
One Commerce Square
Philadelphia, PA 19103
(267) 780-2000
(215) 405-9070 (fax)

Stephen E. Goldman (*pro hac vice*)
Wystan M. Ackerman (*pro hac vice*)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Tel: 860-275-8200

Fax: 860-275-8299
E-mail: sgoldman@rc.com
E-mail: wackerman@rc.com

*Attorneys for Defendants, Travelers Casualty Insurance Company of America and The Travelers Indemnity Company*