IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC R. SHANTZER, DDS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-2093 |
| | : | |
| TRAVELERS CASUALTY | : | |
| INSURANCE COMPANY OF | : | |
| AMERICA, THE TRAVELERS | : | |
| INDEMNITY COMPANY | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                **March 31, 2021**

Plaintiff Eric R. Shantzer, DDS d/b/a Richboro Dental Excellence brings this declaratory judgment action against Travelers Casualty Insurance Company of America asking the Court to declare he is entitled to insurance coverage for business income losses resulting from the coronavirus (COVID-19) pandemic and state government orders closing nonessential businesses. Travelers moves to dismiss the Amended Complaint arguing Shantzer has not pleaded facts sufficient to establish insurance coverage under the policy. Because Shantzer is not entitled to coverage as a matter of law, the Court will grant Travelers' motion and dismiss the Amended Complaint with prejudice.

**BACKGROUND**

Eric Shantzer owns a dental practice with offices in Richboro and Southampton, Pennsylvania. *See* Am. Compl. ¶ 9, ECF No. 14. Shantzer's insurance policy insures business personal property from covered causes of loss. The policy is an "all risk" policy, meaning it protects against all causes of loss unless a particular cause is explicitly exempted by the policy. *See id.* at ¶ 16. At all relevant times, Shantzer made timely premium payments. Like most small business owners around the country, Shantzer incurred significant losses when he was ordered to shut his doors as a result of the COVID-19 pandemic. *See id.* at ¶¶ 58–75.

The Policy contains three relevant provisions for recovery of losses in this case. The first two—the business income and extra expense provision and the civil authority provision—provide certain criteria for loss that is recoverable. The third provision is the virus exclusion, which provides an exception for all types of loss otherwise covered by the policy.

The "business income and extra expense" provision provides reimbursement for property damage, lost income, and extra expenses caused by a "covered cause of loss." Am. Compl. Ex. A, 21–22, ECF No. 14-1. The provision states:

a. Business Income
   (2) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

b. Extra Expense
   (1) Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

Id. The two requirements for coverage under this provision are: (1) "direct physical loss of or damage to" the insured's premises, and (2) the damage must be "caused by or result from a [c]overed [c]ause of [l]oss." Id.

The "civil authority provision" reimburses the insured when the government's response to physical damage to properties other than the insured property prohibits access to the insured's business. Any loss of or damage to properties in the vicinity of the insured premises must also be caused by a "covered cause of loss." The provision states:

The actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within

2

> 100 miles of the described premises, caused by or resulting from a Covered Cause
> of Loss.

*Id.* at 34. Coverage under this provision has three requirements: (1) a civil authority action must "prohibit access" to the insured's premises, (2) the civil authority action must be "due to direct physical loss of or damage to property" at noninsured locations within 100 miles of the insured premises, and (3) such physical loss of or damage to property must be caused by or result from a "covered cause of loss." *Id.*

The "virus exclusion" carves out exceptions from otherwise covered causes of loss. More specifically, this provision defines causes of loss that will not be covered under any substantive provision in the policy, including the business income and extra expense and civil authority provisions. The virus exclusion states:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium
> or other microorganism that induces or is capable of inducing physical distress,
> illness or disease.

*Id.* at 150. If the insured's cause of loss is captured by the virus exclusion, there is no coverage, regardless of the substantive provision claimed by the insured.

Shantzer claims loss due to a series of executive orders issued by Governor Tom Wolf in March 2020, in response to the COVID-19 pandemic. On March 19, 2020, Governor Wolf issued an order "requiring all non-life-sustaining business in [the] Commonwealth to cease operations and close all physical locations." Am. Compl. ¶ 48. On March 23, 2020, Governor Wolf issued a stay-at-home order for residents of Philadelphia, Bucks, Chester, Delaware, and Montgomery Counties. *See id.* at ¶ 49. Finally, on April 1, 2020, Governor Wolf extended the stay-at-home order to the entire Commonwealth. *See id.* at ¶ 50.

As a result of these state actions, Shantzer was forced to close his dental offices. Although the orders provided exceptions for emergency treatment and urgent care, Shantzer was unable to

offer these services because he lacked sufficient personal protective equipment in his offices. *See id.* at ¶ 60. Due to closing his offices, Shantzer's practice incurred significant losses and expense. *See id.* at ¶¶ 58–75. Shantzer filed suit on April 30, 2020, asking the Court to interpret the policy and determine whether he is entitled to coverage for his sustained losses.

Shantzer argues his losses should be covered by the business income and extra expense provision and the civil authority provision of the policy. He also claims the governmental shutdown of small businesses was not meant to be included in the virus exclusion and thus, he has a covered cause of loss. The parties agree judicial interpretation of the business income and extra expense provision, the civil authority provision, and the virus exclusion will determine whether Shantzer's claimed losses are recoverable under the policy.

Travelers filed the instant motion to dismiss arguing the policy does not cover Shantzer's losses as a matter of law. Travelers argues the civil authority provision does not apply because (1) the orders did not "prohibit access" to Shantzer's offices because he was permitted to provide emergency services, (2) the orders were not "due to direct physical loss of or damage to property" in the vicinity of Shantzer's offices, and (3) the COVID-19 pandemic and resulting governmental actions are not covered causes of loss because they fall within the virus exclusion provision. Travelers also argues the business income and extra expense provision does not provide coverage because Shantzer (1) did not experience any physical loss of or damage to his premises, and (2) even if he did, the virus exclusion nonetheless excludes coverage.

In light of the unprecedented COVID-19 pandemic and the response by local, state, and federal government, courts around the country are tasked with interpreting business interruption insurance contracts. Many of these contracts contain identical language to the clauses at issue in this case. Here too, Shantzer and Travelers ask the Court to interpret the policy and decide whether

Shantzer is entitled to coverage. The Court held a telephonic hearing on the motion on February 17, 2021.

**DISCUSSION**

The unambiguous terms of the policy exclude Shantzer's claimed loss under the virus exclusion. Shantzer therefore cannot state a claim for coverage under the policy. The Court will grant Travelers' motion and dismiss the Amended Complaint for failure to state a claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three-step process for applying *Twombly* and *Iqbal*). A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all of the complaint's well-pleaded facts as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

The interpretation of an insurance contract is a question of law. *See Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). A court must interpret the plain language of the insurance contract read in its entirety, "giving effect to all its provisions." *Id.* (citation omitted). The words are to be construed by their "natural, plain and ordinary sense" meaning. *Riccio v. Am.*

*Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997) (citing *Easton v. Wash. Cnty. Ins. Co.*, 137 A.2d 332, 335 (Pa. 1958)). When the policy language is ambiguous, the provision should be construed in favor of the insured. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016). A policy is ambiguous where it is "reasonably susceptible to more than one construction and meaning." *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (citing *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (Pa. 2011)). Policy language may not, however, be stretched beyond its plain meaning to create an ambiguity. *See Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011).

The insured has the initial burden of establishing coverage under the policy. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citation omitted). When the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying coverage, the insurer then has the burden of proving the exclusion applies. *See id*.

Shantzer has failed to meet his burden to establish coverage under either the business income and extra expense provision or the civil authority provision. And regardless, Travelers has met its burden of establishing the virus exclusion provision bars coverage. The Court will therefore grant Travelers' motion.

Shantzer cannot establish coverage under either of the two provisions because he has not established the physical loss or damage element or the covered cause of loss element. The coverage provisions share two key elements: (1) a "physical loss of or damage to property," and (2) a "covered cause of loss."[1]

---

[1] The civil authority provision—in addition to the two common elements above—requires the government's action be "due to," or in response to, the physical damage in the vicinity of the insured's property and the action must "prohibit access" to the insured's premises. Am. Compl. Ex. A, 34, ECF No. 14-1. Because Shantzer cannot meet the required common elements above, the Court does not reach these additional elements.

6

Shantzer cannot meet these requirements. As for "physical loss of or damage to" property, the loss or damage must be *physical*; pure economic losses are intangible and do not constitute property damage.[2] The use of the word "physical" unambiguously means there must be tangible destruction of some part of the property. Moreover, the policy pays for "[e]xtra [e]xpense you incur due to the 'suspension' of your 'operations' during the 'period of restoration.'" Am. Compl. Ex. A, 21–22, ECF No. 14-1. These provisions make clear that there must be some sort of physical damage to the property in need of restoration. *See, e.g., Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 20-3376, at *11.

Because Shantzer's dental offices were not damaged, and otherwise did not experience any physical loss, he is not entitled to coverage under the business income and extra expense provision. Similarly, because there was no physical loss of or damage to *other* properties within 100 miles of Shantzer's offices, he is not entitled to coverage under the civil authority provision. Because Shantzer did not plead physical loss of or damage to his offices or others in the required vicinity,

---

[2] This is consistent with the consensus reached by federal courts around the country in COVID-19 business interruption insurance cases. *See, e.g., Kessler Dental Assocs., P.C. v. The Dentists Ins. Co.*, No. 20-3376, 2020 U.S. Dist. LEXIS 228859, at *11 (E.D. Pa. Dec. 7, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 U.S. Dist. LEXIS 207892, at *6–7 (E.D. Pa. Nov. 6, 2020); *Real Hosp. LLC v. Travelers Cas. Ins. Co.*, No. 20-87, 2020 U.S. Dist. LEXIS 208599, at *10–15 (S.D. Miss. Nov. 4, 2020); *Uncork and Create LLC v. Cincinnati Ins. Co.*, No. 20-401, 2020 U.S. Dist. LEXIS 204152, at *8–14 (S.D. W. Va. Nov. 2, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 20-275, at *14–19 (S.D. Ala. Oct. 21, 2020); *Seifert v. IMT Ins. Co.*, No. 20-1102, 2020 U.S. Dist. LEXIS 192121, *6–8 (D. Minn. Oct. 16, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-2160, 2020 U.S. Dist. LEXIS 171979, at *3–7 (N.D. Ill. Sept. 21, 2020); *Turek Enters v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 U.S. Dist. LEXIS 161198, *13–21 (E.D. Mich. Sept. 3, 2020); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 20-4418, 2020 U.S. Dist. LEXIS 165252, at *12–17 (C.D. Cal. Sept. 2, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 U.S. Dist. LEXIS 156027, at *8–26 (S.D. Fla. Aug. 26, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 359–360 (W.D. Tex. 2020).

he cannot establish coverage. *See Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 2020 U.S. Dist. LEXIS 238254, at \*9–11 (E.D. Pa. Dec. 17, 2020).

Even so, Shantzer cannot plead facts to establish coverage because he also did not experience a "covered cause of loss." *See* Am. Compl. Ex. A, 21-22, ECF No. 14-1. Here, the relevant exception is the virus exclusion, which excludes coverage resulting from a virus capable of illness or disease. Courts have routinely concluded identical virus exclusion provisions are not reasonably susceptible to more than one construction and meaning and are therefore unambiguous. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016); *see also Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 U.S. Dist. LEXIS 207892, at \*10 (E.D. Pa. Nov. 6, 2020) ("The virus exclusion unambiguously bars coverage for plaintiff's claims due to COVID-19.").

The plain meaning of the virus exclusion excludes loss as a result of the COVID-19 pandemic. Despite the fact that the virus exclusion does not reference a "pandemic," it states, "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Am. Compl. Ex. A, 150, ECF No. 14-1. The ordinary meaning of this clause encompasses the COVID-19 pandemic. Whether COVID-19 or the government shutdown caused Shantzer's loss is immaterial. The virus exception explicitly states it excludes coverage under any other provision in the policy, including the business income and extra expense provision and the civil authority provision. This reference to civil authority "contemplates a civil authority action taken in response to a virus and excludes it from coverage." *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 2020 U.S. Dist. LEXIS 238254, at \*17 (E.D. Pa. Dec. 17, 2020). The virus exclusion thus unambiguously precludes coverage for Shantzer's claimed loss.

8

**CONCLUSION**

Shantzer cannot establish he is entitled to coverage under any provision of the policy. There was no physical loss of or damage to either Shantzer's property or other properties within a 100-mile radius. Moreover, the COVID-19 virus and the government's response are unambiguously exempted from coverage by the virus exclusion provision. Accordingly, the Court will grant Travelers' motion and dismiss the Amended Complaint with prejudice.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.